WALTER L. ROSS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73282.  Promulgated April 26, 1934.

*W. A. Eversman, Esq., E. H. McDermott, Esq.,* and *Ellsworth C. Alvord, Esq.,* for the petitioner.
*A. H. Fast, Esq.,* and *H. D. Thomas, Esq.,* for the respondent.

OPINION.

SMITH: The respondent determined a deficiency of $12,948.25 for the calendar year 1931 against the petitioner. The petition alleges:

(a) The Commissioner erroneously held that all payments of commission installments made under a certain trust agreement dated June 1, 1922, were taxable to the petitioner despite the fact that five-tenths (5/10ths) of all commission installments payable under the said trust agreement were paid to assignees under assignments executed by the petitioner dated December 22, 1923; and despite the fact that all payments of commission installments are taxable only in the year 1922.

(b) The Commissioner erroneously held that all interest accrued and paid during 1931 on the deferred commission installments, was taxable to the petitioner, although fifty per cent (50%) of all interest due and payable under the said trust agreement of June 1, 1922, was paid to the petitioner's assignees under the aforesaid assignments dated December 22, 1923.

The facts were stipulated.

So far as is material the facts may be briefly stated as follows.

Petitioner Walter L. Ross resides in Cleveland, Ohio, and for many years was connected with the Toledo, St. Louis & Western Railroad Co., otherwise known as the Clover Leaf. He was its president for a number of years and acted as its receiver from October 1914 to January 1, 1923.

During the receivership stockholders in the Clover Leaf formed a stockholders' protective committee and deposited their stock with the committee, which issued certificates of deposit therefor. Thomas H. Hubbard and Edward F. Searles were the owners of certificates of deposit representing 46,515 shares of preferred stock and 31,885 shares of common stock. In February 1918 Hubbard and Searles entered into an agreement with the petitioner by which they empowered him to sell their certificates, or to enter into a reorganization of the Clover Leaf in their behalf, agreeing to pay him 50 per-

cent of the proceeds of the sale or reorganization over and above any further capital investment by them, and Hubbard and Searles were to receive the remaining 50 percent of the proceeds.

Through petitioner's efforts the Hubbard and Searles stock in the Clover Leaf was sold June 1, 1922, for $2,744,000 to the Clover Leaf Co., a holding corporation organized and owned by O. P. and M. J. Van Sweringen, well known railroad promoters and operators. The Van Sweringens at that time were in control of the New York, Chicago & St. Louis Railroad Co. (Nickel Plate) and the Lake Erie & Western Railroad, both of which were consolidated with the Clover Leaf in 1923 to complete their system from the Mississippi and Lake ports to the Atlantic seaboard. The consolidation was named " The New York, Chicago and St. Louis Railroad Company."

Hubbard and Searles both died before the sale of the stock and before the transaction was consummated, but it was carried out by their personal representatives by contract dated June 1, 1922, to which the personal representatives, the petitioner, the Clover Leaf Co., and the Union Trust Co. of Cleveland, Ohio, as trustee, were parties.

It was provided in this contract in substance that the buyer, Clover Leaf Co., should pay to the sellers, the Hubbard and Searles estates, the sum of $1,372,000 by issuing and delivering to the sellers its serial coupon notes in that amount, maturing as follows: $34,300 par value of said notes shall be payable on the first day of June, and on the first day of December in each year commencing on the first day of June 1924, and ending on the first day of December 1943. For the first five years the notes were to bear interest at 3½ percent per annum, for the second five years at 4½ percent per annum, and for the balance of the period at 5 percent per annum. The contract further provided that the buyer, Clover Leaf Co., should pay the petitioner's commission of $1,372,000 and that this should be accomplished by the buyer paying to the trustee for the benefit of the petitioner said sum in 40 equal semiannual installments of $34,300 each, the installments to be payable on the first day of June and the first day of December in each year, commencing on June 1, 1924, and continuing until December 1, 1943, with interest thereon at the same rates as provided in the notes given to the sellers. No notes or other negotiable instruments were given petitioner evidencing these payments, but this contract providing for the payment of his commission was accepted by the petitioner in full satisfaction of his rights against the sellers, the Hubbard and Searles estates, of his rights to the 50 percent commission under the contract of 1918.

The stocks sold under the contract, together with other stocks, were deposited with the trustee as security for the performance

499

by the buyer of its obligations under the contract. Many provisions were contained in the contract for other protective measures in behalf of petitioner or his assigns, and the sellers or the holders of the notes, but the use of these has been unnecessary as the installment payments and interest have been promptly made, up to and including the taxable year 1931.

On December 22, 1923, the petitioner made, executed, and delivered separate written assignments to the following individuals (members of petitioner's immediate family and their lawful offspring) of the following undivided portions of all his right, title, and interest in the commission, which was payable in installments, and of the interest which was to accrue on the installments remaining unpaid under the agreement of June 1, 1922, together with all rights, powers, privileges, remedies, and benefits " which an owner of a beneficial interest has or may have under said agreement " of June 1, 1922:

| Assignee | Portion |
|---|---|
| Mildred Ross Crow and Harker A. Crow | $\frac{3}{20}$ |
| George S. Ross and Lucille B. Ross | $\frac{3}{20}$ |
| Trustees for the benefit of the lawful offspring of Mildred Ross Crow | $\frac{1}{20}$ |
| Trustees for the benefit of the lawful offspring of George S. Ross | $\frac{1}{20}$ |

Each of the assignments was identical in form except as to amount and name of assignee. The following is a copy of one of them:

For value received, I hereby give, grant, assign, transfer and set over to Mildred Ross Crow and Harker A. Crow, of Toledo, Ohio, all my right, title, and interest in and to an undivided three-twentieths (3/20ths) share of my commission and the interest accrued and hereafter to accrue thereon, under and by virtue of, and as specified in, a certain agreement dated June 1, 1922, among Arthur T. Walker, as domiciliary executor in Massachusetts of the will of Edward F. Searles, deceased, Arthur T. Walker and Lewis L. Delafield, as ancillary executors in New York of the will of Edward F. Searles, deceased, John Hubbard, Sibyl E. Darlington and Anna Weir Hubbard, as executors of the estate of Thomas H. Hubbard, deceased, therein referred to as " Sellers ", The Clover Leaf Company, therein referred to as " Buyer ", said Walter L. Ross, therein referred to as "Agent ", and The Union Trust Company of Cleveland, Ohio, therein referred to as " Trustee ", and a supplementary agreement thereto dated October 25, 1923, among said The Clover Leaf Company, said Walter L. Ross and said The Union Trust Company, reference to which agreements is hereby expressly made, together with any and all rights, powers, privileges, remedies and benefits which an owner of a beneficiary interest in such share has or may have under said agreements or any other further agreements made or entered or to be made or entered into in respect of the subject matter of the same. Provided, however, that assignees shall pay federal income taxes, if any, which may be assessed against assignor or his estate upon the property or the interest herein assigned.

Dated at Toledo, Ohio, December 22nd, 1923.

[Signed] WALTER L. Ross.

These assignments were made without monetary consideration. The trustee, after notification, paid to each assignee his or her share

of the semiannual installments and interest, and during the taxable year 1931 made payments to the assignees as follows:

| | Fractional part | Principal | Interest | Total |
|---|---|---|---|---|
| Mildred Ross Crow | 3/40 | $5,145.00 | $2,675.40 | $7,820.40 |
| Harker A. Crow | 3/40 | 5,145.00 | 2,570.50 | 7,715.50 |
| George S. Ross | 3/40 | 5,145.00 | 2,624.95 | 7,769.95 |
| Lucille B. Ross | 3/40 | 5,145.00 | 2,624.95 | 7,769.95 |
| Mildred Ross Crow Trust | 1/10 | 6,860.00 | 3,498.60 | 10,358.60 |
| George Ross Trust | 1/10 | 6,860.00 | 3,498.60 | 10,358.60 |
| Walter L. Ross | 5/10 | 34,300.00 | 17,493.00 | 51,793.00 |
| Total | | 68,600.00 | 34,986.00 | 103,586.00 |

Each of the assignees included the above amounts in his or her income tax return for 1931 and paid the tax thereon. Petitioner did not include same in his income tax return for the taxable year, but they were included therein by the respondent, thus giving rise to the deficiency in controversy.

Petitioner did not include in his income tax return for 1922 the fair market value of his interest in the contract of June 1, 1922, and for that year and 1923 included only the interest received on the deferred payments provided for in the contract. In the following years, including the taxable year 1931, he included in his income tax returns the amounts of installments and interest received by him from his remaining one-half interest in the contract of June 1, 1922. Petitioner at all times kept his books on the cash receipts and disbursements basis.

Petitioner contends (1) that the entire fair market value of his interest in the contract of June 1, 1922, was taxable to him as income in 1922, and that it is erroneous to include any part thereof in his taxable income for 1931; (2) that petitioner is not taxable on any of the payments of installments made to the assignees in 1931; and (3) the interest paid to the assignees in 1931 is not taxable to him.

Relative to the first point it is true that petitioner's interest in the contract may be considered as property and that it had considerable value, but under the circumstances of this case it may not be successfully claimed that it was taxable in 1922 only. Petitioner was on the cash receipts and disbursements basis and of his own volition returned his portion of the installment payments and interest in the years when received, and his assignees of the other 50 percent did likewise. Limitation has now run as to 1922, and petitioner will not now be permitted to change his theory of the time or manner of taxing his interest in said contract. A similar situation arose in the cases of *Commissioner* v. *Moore*, 48 Fed. (2d) 526, certiorari denied, 284 U.S. 620; *Commissioner* v. *Garber*, 50 Fed. (2d) 588; and *Teck Hobbs*, 26 B.T.A. 241.

In the *Moore* case the Court of Appeals for the Tenth Circuit said:

Conceding for the argument, that the statute and regulation afforded the taxpayers the election of treating the obligations of the purchaser as the equivalent of cash, the taxpayers otherwise elected; they may not now change that election, particularly since the result would be to throw all of the profit into a year where collection is barred by limitation.

*Commissioner* v. *Garber, supra,* is to the same effect.

The Board in the *Teck Hobbs* case, *supra,* quoted from *Commissioner* v. *Garber, supra,* as follows:

The facts and the law in the instant case are identical with those in *Commissioner of Internal Revenue* v. *M. C. Garber* and related cases, decided by the Tenth United States Circuit Court of Appeals on March 14, 1931, 48 F. (2d) 526. The respondents in that case were the associates of the respondent in the present suit. In that case, the court, holding, as we do, that the trilateral transaction whereby the taxpayers sold their Garfield oil stock for $500,000 cash and $2,500,000 in deferred payments, gave rise to no income in 1918 save as to the cash payment, said: [The court here quotes from the opinion of the Tenth Circuit].

*With this holding we are in entire accord. Such a view is based upon sound public policy as well as upon written law. It makes income taxable when it is received by the citizen. It precludes the possibility of a sudden change of theory after the statute of limitations has run. It does mathematical justice between government and taxpayer.* [Italics supplied.]

See also *Commissioner* v. *Liberty Bank & Trust Co.* (C.C.A., 6th Cir.), 59 Fed. (2d) 320; *Askin & Marine Co.* v. *Commissioner* (C.C.A., 2d Cir.), 66 Fed. (2d) 776; affirming 26 B.T.A. 409; *Moran* v. *Commissioner* (C.C.A., 1st Cir.), 67 Fed. (2d) 601; affirming 26 B.T.A. 1154; *Crane* v. *Commissioner* (C.C.A., 1st Cir.), 68 Fed. (2d) 640; affirming 27 B.T.A. 360; *Swartz, Inc.* v. *Commissioner* (C.C.A., 5th Cir.), 69 Fed. (2d) 633.

Upon this point our decision is for the respondent.

The next question relates to the assignments by petitioner of parts of his interest under the contract. We stated in *William Ernest Seatree,* 25 B.T.A. 396:

It is well settled that an assignment of income does not relieve the assignor of the tax thereon, but that if property or property rights are assigned the income subsequently arising therefrom is not taxable to the assignor, for the reason that the property no longer belongs to him and therefore the income from such property belongs, not to him, but to the new owner. * * * [Citing cases.]

This is the general rule as established by Board and court decisions. The difficulty arises in its application. It is contended here by respondent that the commissions payable to petitioner were for personal services rendered by him and that this case is governed by the rule laid down in *Lucas* v. *Earl,* 281 U.S. 111, and like cases, while,

on the other hand, petitioner urges that petitioner's rights under the contract were property rights resulting from services already performed and completed and were assignable, and that this case is governed by the rule laid down in *Hall* v. *Burnet*, 54 Fed. (2d) 443.

In the instant case petitioner performed certain services between 1918 and 1922, entitling him to certain compensation. When the transaction was concluded a contract was entered into providing for the manner and time of the payment of the compensation.

The contract is an elaborate one and provides both for the payment of the purchase price to the sellers of the stock, and of the commission to petitioner. Both obligations are secured by the deposit of several millions of securities with the trustee, and for both the payments are the same, except that the seller's interest is evidenced by negotiable notes, while that of petitioner is merely by the contract. There is no doubt that the interest of the sellers in the contract is a property right, and we see no reason why that of petitioner is not also.

We think the case of *Hall* v. *Burnet*, *supra*, is applicable here. Counsel for respondent is mistaken in his assertion that this case was overruled by the subsequent case of *Hall* v. *Helvering*, 68 Fed. (2d) 399, involving the same facts. The latter case related to a question that was not considered in the former and its decision did not affect that in the former case.

It should be kept in mind that the assignments were not of future earnings or salary which were not in existence, but were of an interest in an existing contract given in payment for past services. Cf. *Copland* v. *Commissioner*, 41 Fed. (2d) 501; *Commissioner* v. *Field*, 42 Fed. (2d) 820; *Nelson* v. *Ferguson*, 56 Fed. (2d) 121; certiorari denied, 286 U.S. 565; *Rose* v. *Commissioner*, 65 Fed. (2d) 616; *William Ernest Seatree, supra*.

We think the language of the assignments is sufficient to indicate an irrevocable assignment of a part of the corpus and that the payments made to the assignees are not includable in the taxable income of the petitioner.

In view of the conclusions we have reached it is not necessary to determine the fair market value, if any, of the June 1, 1922, contract, nor the third point raised by petitioner that in no event is the interest received by the assignees taxable to him.

*Judgment will be entered under Rule 50.*