Estate of Walter L. Ross, Deceased, George S. Ross, Executor v. Commissioner.
Estate of Ross v. Commissioner
Docket No. 111250.
United States Tax Court
1943 Tax Ct. Memo LEXIS 159; 2 T.C.M. (CCH) 573; T.C.M. (RIA) 43378; August 6, 1943
*159 Merwyn G. Leatherman, Esq., 1600 Ohio Bldg., Toledo, O., for the petitioner. Thomas F. Callahan, Esq., for the respondent. STERNHAGEN Memorandum Opinion STERNHAGEN, Judge: The Commissioner determined the following deficiencies in income tax: 1936, $28,552.41; 1937, $28,074.17; 1938, $25,547.56; 1939, $203,106.10. He included in the taxpayer's 1936, 1937, and 1938 income amounts of semi-annual installments and interest which were received by his assignees of interests in a contract and in 1939 income, the installments remaining unpaid and interest. The facts are all stipulated and findings are not required. [The Facts] The decedent, Walter L. Ross, was a resident of Cleveland, Ohio. He died on April 5, 1939. His tax returns were filed in the 18th District of Ohio. His books and his tax returns were on the cash receipts and disbursements basis. Ross was receiver of The Toledo, St. Louis and Western Railroad Company (hereinafter referred to as Western Railroad) from October, 1914, to January 1, 1923. In February, 1918, Hubbard and Searles, who were owners of certificates of deposit, representing 46,515 shares of common and 31,885 shares of preferred of Western Railroad, made *160 an agreement with Ross empowering him to negotiate sale of their certificates and that for his services he should receive 50 per cent of proceeds or equities over any further capital investment by them. Ross interested O.P. and M. J. Van Sweringen in the purchase of the certificates and made a contract with them on February 7, 1922, in which they agreed to purchase the certificates through a prospective corporation for $2,744,000. The Clover Leaf Company, a Delaware corporation, was organized, the capital stock of which was owned entirely by The Vaness Company, a Delaware corporation, 80 per cent of the common stock of which was owned by the Van Sweringens and 20 per cent by two others. On June 1, 1922, The Clover Leaf Company made a contract with the executors of the estates of Hubbard and Searles, Ross, and The Union Trust Company, to purchase the certificates and pay the price to the estates of Hubbard and Searles and to Ross. The Clover Leaf Company agreed to pay The Union Trust Company, as trustee, for Ross or his assigns, $1,372,000 in forty semiannual installments of $34,300 each on June and December 1, commencing June 1, 1924, and ending December 1, 1943, with interest at *161 specified rates. Ross' rights against The Clover Leaf Company under the agreement were accepted by him in full satisfaction of his rights against Hubbard and Searles under his contract with them and of his rights against the Van Sweringens under his agreement with them of February 7, 1922. The semiannual installments and interests have been paid each year. Collateral security was required for the payment of the price. On June 1, 1922, the fair market value of the securities held by the trustee was substantially in excess of the obligations of The Clover Leaf Company under the agreement. Subsequently, pursuant to a supplemental agreement dated October 25, 1923, some of the collateral was released and other collateral substituted, but at all times the securities deposited as collateral had a fair market value substantially in excess of the amounts due under the contract. On December 22, 1923, Ross executed to members of his immediate family and their offspring assignments of undivided portions of all his interest in the commission and interest payable under the agreement of June 1, 1922, together with all his rights as owner of a beneficial interest in such share under said agreements, *162 as follows: Portion
Assignee
3/20
Mildred Ross Crow and Harker A. Crow
3/20
George S. Ross and Lucille B. Ross
1/10
Trustees for the benefit of the lawful
offspring of Mildred Ross Crow
1/10
Trustees for the benefit of the lawful
offspring of George S. Ross The trustee immediately assented and thereafter made payments each year directly to each assignee and Ross in their proportionate shares of the semiannual installments and interest. In his income tax return for 1922, Ross did not include in gross income the fair market value of his interest in the June 1, 1922, contract, and for that year and for 1923 he included the amounts of interest received by him as provided for in the contract. In each of the years after 1923 and until his death, Ross reported in his returns an amount equal to one-half of the commission payments or installments and the interest payable on one-half of the deferred payments. After an examination of Ross' return for 1922 by a revenue agent no additional taxes were determined by the Commissioner for the years 1922 and 1923. The assignees included in their returns the portions of the installments and interest received by them each year from 1924 *163 up to and including 1931 and paid the tax computed thereon. By notice of deficiency dated June 9, 1933, the Commissioner included in Ross' 1931 gross income the commissions and interest received in 1931 by the assignees. On August 8, 1933, Ross filed a petition with the United States Board of Tax Appeals, Docket No. 73282, for the redetermination of the deficiency. On April 26, 1934, the Board (30 B.T.A. 496) held that the assignments were assignments "of a part of corpus" and that the amounts of principal and interest received by the assignees were not Ross' income. The decision of the Board was entered May 31, 1934, and was affirmed on April 17, 1936, by the Circuit Court of Appeals for the Sixth Circuit in Commissioner v. Ross, 83 Fed. (2d) 18. At the time of Ross' death on April 5, 1939, $343,000 remained unpaid under the June 1, 1922, agreement - $171,500 to the assignees and $171,500 to Ross. To comply with Section 134 of the 1942 Revenue Act, the executor and the residuary legatees in February, 1943, filed with the Commissioner consents under oath that in their own gross income should be included when and as received *164 the semiannual installments and interest on deferred payments which would have been paid to Ross had he lived and which they acquired by bequest and inheritance from him. Fifty per cent of the commission payments unpaid at the date of Ross' death, together with accrued interest thereon to date of death, were included in the gross estate of Ross and tax paid thereon. To the assignees was paid in 1936, 1937 and 1938, as their pro rata share of interest on the deferred installments, the following amounts: 1936, $13,328.56; 1937, $12,135.74, and 1938, $9,861.25. In determining the deficiencies herein, the Commissioner included in Ross' taxable income for 1936, 1937 and 1938, the portion of the semiannual installments received by the assignees, $34,300, and the amount of interest above set forth; for 1939, the Commissioner included the entire sum remaining unpaid at the date of Ross' death, $343,000, and interest, $2,959.74, being "interest accrued on commission of $171,500.00 as at April 5, 1939, the date of death". [Opinion] The Commissioner recognizes that the decision of this Court ( Walter L. Ross, 30 B.T.A. 496, affirmed by the Circuit Court *165 of Appeals for the Sixth Circuit ( Commissioner v. Ross, 83 Fed. (2d) 18), held squarely that after the assignments of December 22, 1923, the amounts received by the assignees directly from the trustee were not Ross' income taxable to him. Whatever question existed before that decision between Ross and the Government was set at rest, and the effect of the assignments upon Ross' income was finally determined. It is res judicata, and may not be litigated again by the same parties. The Commissioner, however, seeks to avoid the finality of that decision by invoking Helvering v. Eubank, 311 U.S. 122, contending that that decision established a new principle and has the effect of overthrowing the Ross case. Whether the principle of the Eubank decision covers the facts of the Ross case is certainly not free from doubt, although we think it does not; but even if it did, the decision of the Ross case is the law of the case, and leaves no room for an opposite decision here on the same question. The rule of the Eubank case applies to the income derived from an insurance agency contract which as present *166 or future income is the subject of assignment, and does not purport to overrule the holding in the Ross case that periodic payments received under a prior contract as the subject matter of a prior assignment of a part of corpus is not taxable to the assignor as income. See Blair v. Commissioner, 300 U.S. 5. The Commissioner's determination that the amounts received by assignees in the taxable years are within Ross' income is reversed. The executor and the residuary legatee in February, 1943, filed the consents prescribed in the Revenue Act of 1942, Section 134, amending Internal Revenue Code, Section 42. These consents are entirely in accordance with the requirements of the amendment. By reason of the amendment, the accrued income at the time of Ross's death is not taxable to him as of the last period of his life, as it might have been under Section 42 of the earlier statute. The $171,500, remaining unpaid commissions at the time of Ross' death, are not properly within his income and are not taxable to him within the last period of his life. The Commissioner's determination in this respect is reversed. Decision will be entered under Rule 50. *167